379 A.2d 1305

In re ESTATE of Henry W. BREYER.

Appeal of Catharine Breyer VAN BOMEL in Nos. 557 & 558.

In re ESTATE of Edith S. BREYER.

Appeal of Charlotte Breyer RODGERS in Nos. 559, 560 & 561.

Supreme Court of Pennsylvania.

Argued Oct. 13, 1976.

Decided Oct. 28, 1977.

H. Peter Somers, Raymond T. Cullen, Philadelphia, for appellants.

Arthur C. Dorrance, Jr., Philadelphia, for appellee, First Pennsylvania Bank.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Appellant Catharine Breyer Van Bomel is the income beneficiary of two inter vivos trusts established by Henry Breyer in August, 1934. Appellant Charlotte Breyer Rodgers is the income beneficiary of three inter vivos trust established by Edith Breyer, two of which were settled in November, 1954, the third in November, 1958. All five trusts are still active. In July, 1974, appellee First Pennsylvania Bank (First Pennsylvania), the trustee of the five trusts, filed accounts in the Orphans' Court Division of the Court of Common Pleas of Montgomery County, seeking compensation from the principal of the five trusts. Appellants challenge the final decrees of the orphans' court awarding $28,850 in interim commissions from principal. Appellants claim that, upon settlement of the trusts, First Pennsylvania entered into fee agreements barring interim commissions. We conclude that a fee agreement bars First Pennsylvania from collecting interim commissions from the principal of the Henry Breyer trusts but that no such agreement bars First Pennsylvania from collecting interim commissions from the principal of the Edith Breyer trusts.

Accordingly, we reverse the decrees affecting the Henry Breyer trust and affirm the decrees affecting the Edith Breyer trusts.[1]

## I

Upon the creation of the two Henry Breyer trusts in 1934, William David, vice-president of First Pennsylvania, wrote to Henry Breyer concerning the establishment of the trust. In the letter, Mr. David stated:

> "This is to advise you in accepting these trusts that our charge for commissions will be 2% on the income as received and 1% on the principal at the termination of the trusts."

Appellant Catharine Breyer Van Bomel argues that this letter constitutes an agreement barring interim commissions from principal.

Appellant Charlotte Breyer Rodgers challenges the decree affecting the 1954 and 1958 trusts. She argues that notations entered upon First Pennsylvania's "docket cards," internal informational forms summarizing the basic characteristics of each of First Pennsylvania's trust accounts, evidence fee agreements barring payment of interim commissions from principal. The docket cards for the 1954 trusts contain the following with regard to commissions:

> "COMMISSIONS Principal to be determined upon termination. Income 5%."

The following entry was made on First Pennsylvania's docket card for the 1958 trust:

> "COMMISSIONS Income—5%. Principal at termination."

The orphans' court rejected appellants' contentions that the letter and the entries on the docket cards each evidenced fee agreements proscribing the payment of interim commissions from the principal of the respective trusts. The court found that the letter written by First Pennsylvania's vice-president concerning the two Henry Breyer trusts only

---

1. We hear this appeal pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(3), 17 P.S. § 211.202(3) (Supp.1977).

evidences an agreement limiting the amount of commissions from principal to one per cent; the court held it did not bar the payment of interim commissions. The court concluded that the docket cards relating to the three Edith Breyer trusts do not indicate that the parties intended to limit either the amount or the timing of commissions from principal. Because the court found no agreement barring interim commissions from the principal of either the Henry Breyer or the Edith Breyer trusts, and because it determined that First Pennsylvania was not fully compensated for its services, it approved payment to First Pennsylvania of interim commissions.

## II

Since 1953 the Legislature has allowed courts to award compensation to a trustee out of principal, even while the trust is still active, upon a showing that the trustee has not been fully compensated for services rendered. 20 Pa.C.S.A. § 7185 (1975).[2] This legislation also applies in the case of trusts established before 1953, *Ehret Estate*, 427 Pa. 584, 235 A.2d 414 (1967).[3]

**2.** This section provides in part:

Compensation

(a) When allowed.—The court shall allow such compensation to the trustee as shall in the circumstances be reasonable and just, and may take into account the market value of the trust at the time of the allowance, and calculate such compensation on a graduated percentage.

(b) Allowed out of principal or income.—Neither the fact that a fiduciary's service has not ended nor the fact that the trust has not ended shall be a bar to the fiduciary's receiving compensation for his services out of the principal of the trust. Whenever it shall appear either during the continuance of a trust or at its end, that a fiduciary has rendered services for which he has not been fully compensated, the court having jurisdiction over his accounts, shall allow him such original or additional compensation out of the trust income or the trust principal or both, as may be necessary to compensate him for the services theretofore rendered by him. The provisions of this section shall apply to ordinary and extraordinary services alike.

\*　　\*　　\*

**3.** Before the enactment of this statute, a trustee could not, absent a showing of unusual or extraordinary circumstances, take interim commissions from the principal of a trust. E.g., *Williamson Estate,*

However, express limitations on the time for payments from principal imposed by the settlor were not disturbed. 20 Pa.C.S.A. § 7185(c) provides:

\* \* \*

"(c) Compensation prescribed by will or other instrument—Where the compensation of a fiduciary is expressly prescribed either by provisions of a will or deed of trust or other instrument under which he is acting or by provisions of an agreement between him and the creator of a trust, nothing in this section shall change in any way the rights of any party in interest or of the fiduciary."

\* \* \*

Likewise, this Court in *Ehret Estate,* supra, stated that the settlor could control the timing of such commissions so as to preclude their payment in the interim.[4]

Express limitations on the time for payments from principal may be imposed either in the trust instrument, *In re Reed,* 467 Pa. 371, 376, 357 A.2d 138, 141 (1976); Restatement (Second) of Trusts § 242 Comment f (1959); III Scott on Trusts § 242.4 (3d ed. 1967), or in compensation agreements, *Patterson Trust,* 8 D. & C.2d 149 (1956); Restatement (Second) of Trusts § 242 Comment h (1959); III Scott on Trusts § 242.6 (3d ed. 1967). Appellants contend that the 1934 letter and the docket cards evidence compensation agreements by which the settlors and First Pennsylvania

368 Pa. 343, 82 A.2d 49 (1951); *Bosler's Estate,* 161 Pa. 457, 29 A. 57 (1894). This rule was based on two considerations: (1) that any other practice would lead to a depletion of the principal of trusts, see *Ehret Estate,* 427 Pa. 584, 596, 235 A.2d 414, 421 (1969); and (2) that the trustee has not fully performed its duties until the termination of its relationship to the trust, *Penn-Gaskell's Estate* (No. 1), 208 Pa. 342, 344, 57 A. 714, 714 (1904).

The rule was not popular, see *Williamson Estate,* supra, 378 Pa. at 357–58, 82 A.2d at 56–57 (concurring and dissenting opinion of Justice Bell); Comment, The Constitutionality of Retroactive Trustee Compensation Statutes in Pennsylvania, 114 U.Pa.L.Rev. 530, 531 (1966), and was changed by the Legislature with the 1953 enactment.

4. "[A]bsent a statute *or a controlling provision by a testator or a settlor,* there is no vested right in a beneficiary in the time of payment of a commission." 427 Pa. at 597, 235 A.2d at 421 (emphasis added).

intended to limit the timing of commissions from principal to payment at termination of the respective trusts.

## A. The Henry Breyer Trusts.

Appellant Catharine Breyer Van Bomel argues that the orphans' court misinterpreted the letter written by the vice-president of First Pennsylvania to Henry Breyer. We agree.

■ According to the uncontradicted testimony of William Hord, vice-president of the trust division of First Pennsylvania, the 1934 letter memorialized a special fee agreement between Henry Breyer and First Pennsylvania—one in which First Pennsylvania agreed to accept a rate of commissions for its services in handling the Henry Breyer trusts which was lower than the court rates it would have received absent this special agreement. Thus the writing evidences a contract between the parties. We are faced with the task of interpreting that contract.

■ When the parties to an agreement reduce their understanding to a writing which uses clear and unambiguous terms, a court need look no further than writing itself when asked to give effect to that understanding. *Robert F. Felte, Inc. v. White*, 451 Pa. 137, 144, 302 A.2d 347, 351 (1973); *East Crossroads Center, Inc. v. Mellon-Stuart Co.*, 416 Pa. 229, 205 A.2d 865 (1965); but see 3 Corbin on Contracts § 535 (rev. ed. 1960).[5]

■ The 1934 letter unambiguously states that First Pennsylvania's "charge for commissions will be 2% on income *as received*" (emphasis added). Thus, the parties expressly provided for both the amount and timing of com-

---

5. We are not unmindful of the dangers of focusing only upon the words of the writing in interpreting an agreement. A court must be careful not to "retire into that lawyer's Paradise where all words have a fixed, precisely ascertained meaning; where men may express their purposes, not only with accuracy, but with fulness; and where, if the writer has been careful, a lawyer, having a document referred to him, may sit in his chair inspect the text, and answer all questions without raising his eyes." Thayer, Preliminary Treatise on Evidence 428, quoted in 3 Corbin on Contracts § 535 n.16 (1960).

missions from income; that is, that commissions of 2% from income should be paid First Pennsylvania during the life of the trust.

In contrast, the letter states that the charge for commissions from principal shall be "1% on the principal *at the termination of the trusts*" (emphasis added). The orphans' court interpreted this language to mean only that the ultimate amount of principal commissions was to be 1% of the principal at the termination of the trust, but that it did not fix the timing of payments so as to bar interim commissions. We cannot agree. The court's interpretation might be possible, if not entirely plausible, if the provision were read in isolation. However, when read in context it is clear that, with regard to both income and principal commissions, the parties intended to fix the amount and the timing of payments. Income commissions were to be paid "as received" and the principal commission paid "at the termination of the trust." This express agreement bars payment of interim commissions from principal.

Even if we were to find that the letter is not unambiguous and thus in need of extrinsic evidence for the purpose of clarification, the extrinsic evidence presented compels the same conclusion. Mr. Hord testified that fee agreements entered into by First Pennsylvania at the time of the creation of the 1934 trusts made no charges on principal during the lives of the trusts. From this uncontradicted testimony, it is fair to say that when Mr. David wrote "at the termination of the trusts," he meant that charges on principal would be made in conformity with First Pennsylvania's then-current policy.

■ Further assuming an ambiguity in the 1934 letter, an application of the rule of construction which construes such doubtful language most strongly against the drafter of the instrument, see *Burns Mfg. Co. v. Boehm*, 467 Pa. 307, 313, 356 A.2d 763, 766 (1976); Restatement (Second) of Contracts § 232 (Ten. Draft No. 5, 1970), would lead us to the same result.

■ Appellee urges that such a construction of the 1934 letter presumes a "clairvoyant waiver" of the benefits of 20 Pa.C.S.A. § 7185. We do not agree. The law at the time the agreement was entered into may have influenced the terms agreed upon. Nevertheless, the statute was not designed to alter an existing agreement fixing the time of commissions from principal. Here, there was a compensation agreement barring interim commissions from principal. Thus the orphans' court erred in awarding interim commissions.

B. The Edith Breyer Trusts.

■ Appellant Charlotte Breyer Rodgers argues that the entries made on the docket cards for the Edith Breyer trusts evidence an agreement barring payment of commissions from principal before the termination of the trusts. We do not agree.

Appellant Charlotte Breyer Rodgers contends that entries made on the docket cards for the Edith Breyer trusts should be read in the same manner as the terms of the 1934 letter. She would have us hold that the notation "principal to be determined upon termination" on the 1954 docket cards and the notation "principal at termination" on the 1958 docket card indicate, like the 1934 letter, an agreement to postpone the payment of commissions from principal until the termination of the trust.

However, unlike the 1934 letter to the settlor of the trusts, the docket cards were designed only to provide First Pennsylvania with an internal summary of the relevant features of the trust account. They were not designed or used as a contract with the settlor setting forth the rights and obligations of First Pennsylvania. Thus the docket cards, the contents of which were never communicated to the settlor, must be treated differently from a writing between the parties such as the 1934 letter.

Entries on the docket cards describing the commissions First Pennsylvania would take could reflect an oral agreement. On the other hand, the entries merely could indicate

the commissions First Pennsylvania contemplated when no compensation agreements have been entered into. We conclude that the entries on the docket cards in this case reflect the latter situation.

William Hord gave uncontradicted testimony about what these notations meant. In 1949, according to Mr. Hord, First Pennsylvania instituted an optional system for collecting commissions known as the "pay-as-you-go" fee schedule. Under this schedule, commissions were charged either to income or to principal during the life of the trust, based on periodic principal evaluations. If this optional method for calculating commissions met with a customer's approval, it would be indicated as such on the customer's docket card.

If, however, the pay-as-you-go formula was not agreed upon, then, according to Mr. Hord, notations of the kind found on the docket cards for the Edith Breyer trusts would be made. These notes—"Principal to be determined upon termination; income 5%" and "income 5%; principal at termination"—signified that First Pennsylvania did not enter into an agreement and that it was willing to accept then-current court commissions for its services.[6] In light of this uncontradicted testimony, we conclude that the entries did not reflect an agreement on the part of First Pennsylvania to abandon the opportunity to obtain interim commissions from principal as allowed by statute.[7]

6. Pennsylvania, unlike some jurisdictions, has no statute fixing the amount of compensation for trustees. See Comment, The Computation of Trustee Compensation in Pennsylvania, 13 Vill.L.Rev. 622 (1968); III Scott on Trusts § 242 (3d. ed. 1967). The record indicates that at the time of the settlement of the 1954 and 1958 trusts, orphans' courts were awarding commissions from income in the amount of five per cent.

7. Appellant Charlotte Breyer Rodgers contends that First Pennsylvania's failure to seek interim commissions before this accounting evidences an agreement. We find this argument unconvincing. First Pennsylvania's failure to seek interim commissions from principal before these accounts were filed cannot be said to constitute evidence of an agreement not to seek such commissions. Nothing in the statute requires a trustee to make regular demands on the principal; indeed this state does not provide for commissions from principal unless the trustee can demonstrate that he has not been

### III

█ Appellant Charlotte Breyer Rodgers contends in the alternative that First Pennsylvania has not met its burden of showing that it has not been fully compensated within the meaning of 20 Pa.C.S.A. § 7185. We do not agree.

█ "A fiduciary's compensation depends upon the extent and character of the labor and the responsibility involved. Supervision of the amount of compensation is peculiarly within the discretion of the [orphans' court]. Unless such discretion is clearly abused the judgment will not be disturbed on appeal." *Faust Estate*, 364 Pa. 529, 530, 73 A.2d 369, 370 (1950); *Browarsky Estate*, 437 Pa. 282, 285–86, 263 A.2d 365, 366 (1970). First Pennsylvania introduced into evidence a table of fees which suggest that its current commissions from the trusts are less than it would receive if current, competitive rates were charged. No countervailing evidence suggesting First Pennsylvania has not performed services commensurate with the proposed commissions has been introduced by appellant Charlotte Breyer Rodgers. In these circumstances, we find no such abuse and therefore affirm the award of interim commissions from the principal of the Edith Breyer trusts.[8]

Decrees in Nos. 557 and 558 reversed; decrees in Nos. 559, 560 and 561 affirmed. Each party pay own costs.

JONES, former C. J., did not participate in the decision of this case.

fully compensated for services. See 20 Pa.C.S.A. § 7185(b) (1975). First Pennsylvania's failure to seek interim commissions from these trusts at an earlier date may simply indicate that previously, commissions from income were sufficient.

8. Appellant Charlotte Breyer Rodgers also contends that the testimony of Randolph McKean, C.P.A., was improperly excluded. Mr. McKean would have testified that the payment of interim commissions from principal would diminish the amount of principal and thus reduce the income of the beneficiaries. We agree with the orphans' court that this evidence is irrelevant. The Legislature presumably has considered this problem and has authorized interim commissions nevertheless.