In re MODERN TRANSFER CO., INC., Debtor.

MODERN TRANSFER CO., INC., Debtor,

and

Alan M. Black, Receiver of Modern Transfer Co., Inc., Plaintiffs,

v.

STRICK CORPORATION, Defendant.

Bankruptcy No. 76–1450 TT.

United States Bankruptcy Court, E. D. Pennsylvania.

Feb. 17, 1982.

Gary Schildhorn and Alexander N. Rubin, Jr., Philadelphia, Pa., for plaintiff.

S. Jay Cooke, Philadelphia, Pa., for defendant.

## OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

The plaintiffs seek an accounting of the proceeds realized from the defendant's sale of certain trailers following their repossession from the plaintiff. For reasons hereinafter given, the defendant shall pay to the plaintiffs certain net proceeds in excess of the debt due defendant.[1]

The facts of this case are as follows:

An involuntary petition in bankruptcy was filed against the debtor-plaintiff, Modern Transfer Co., Inc., (hereafter referred to as "Modern") in July, 1976. Modern filed a plan or arrangement on February 2, 1978, which was confirmed by Order of this Court dated December 27, 1978. The instant complaint was filed by Modern and its Receiver, Alan M. Black, against defendant Strick Corporation (hereafter referred to as "Strick") on September 5, 1978. Although Strick had been duly notified of these proceedings, they have not filed any proof of claim.[2]

The complaint is based upon a series of contracts, agreements and transactions between the parties governing the sale of 245 trailers to Modern by Strick. The two original contracts were drawn up by Strick and executed by the parties on February 15, 1973. In these instruments, the language on the printed form which provides for the rebate of unearned finance charges by the seller in the event of buyer's prepayment by the method commonly known as the Rule of

---

1. This opinion constitutes the findings of fact and conclusions of law as required by Rule 752 of the Rules of Bankruptcy Procedure.

2. Strick is now barred from filing a proof of claim due to 11 U.S.C. § 93(m) repealed 1978.

78's, is stricken by typewritten x's. Payments were made under the first contract. The second contract was dated to commence on June 1, 1980, and it never went into effect.

The third contract was executed on June 4, 1976, and, along with the accompanying agreement of that date, it provided for the refinancing of 100 of the original 245 trailers and the repossession by Strick of the remaining vehicles. This third contract retained the form language pertaining to the Rule of 78's. No payments were made under the third contract. During June and July, 1976, Strick repossessed all of the trailers that were the subject of the contracts. The trailers were resold through Strick Finance Company, the assignee of the contracts.

All of the contracts provided that Strick must account to Modern for the net proceeds of any post-repossession sale, after deducting Strick's reasonable expenses of sale.

Strick submitted an accounting of the proceeds of this sale which computes the rebate due Modern for prepayment under the Rule of 78's method. Strick deducted amounts for reconditioning, outside commission, and a 15% charge for selling expenses, also characterized as an overhead charge. Modern contends that its rebate must be computed by the straight line method. Modern has also challenged Strick's right to the 15% selling expense deduction. Strick is seeking to retain an amount identified as interest due under the third contract, while Modern argues that this contract was rescinded and no interest is due. The parties have submitted a Stipulation of Facts and Issues as well as briefs; oral argument was held on October 20, 1981.

## I

■ The threshold question before us is which of the contracts, if any, controls the method of rebating interest to Modern. The third contract (1976) was intended by the parties to modify the original contracts executed in 1973, with respect to the 100

trailers which were being refinanced. However, the agreement executed simultaneously with the third contract states:

> if all of the terms and conditions herein are not fully met by the parties hereto, this agreement shall be null and void, and Contract Nos. 10–05517 and 10–05518 shall be in full force and effect.

No payments were made under this contract, therefore the 1976 contract is nullified and the 1973 contracts (Nos. 10–05517 and 10–05518) are deemed controlling.

■ To interpret these contracts we look to the established principles of Pennsylvania contract law. A party who seeks to strike down his written obligation must present evidence that is clear, precise and indubitable. *Schoble v. Schoble*, 349 Pa. 408, 411, 37 A.2d 604, 605 (1944). No evidence has been presented to this Court which would prove that Strick did not intend to be bound by the written manifestation of its assent. The affirmative striking of the Rule of 78's clause became part of the contract. When the parties to an agreement reduce their understanding to a writing that uses clear and unambiguous terms, a court should look no further than the writing itself when asked to give effect to that understanding. *In re Estate of Breyer*, 475 Pa. 108, 115, 379 A.2d 1305, 1309 (1977). The essence of contract law is the objective intent of the parties and when there has been no allegation of mistake, fraud, overreaching or the like, it is not the function of the court to redraft a contract to be more favorable to a given party than the agreement he chose to enter. *Brokers Title Co. v. St. Paul Fire and Marine Insurance Co.*, 610 F.2d 1174, 1181 (1979). See also *Harris v. Dawson*, 479 Pa. 463, 468, 388 A.2d 748, 750 (1978).

■ Strick has argued that it could not have intended to surrender its right to a Rule of 78's rebate method because in so doing it would have denied itself the effective rate of interest on its loan. We note that the contracts were negotiated by parties of relatively equal bargaining power. Any ambiguity in the contracts will be con-

strued most strongly against the party who wrote it; in this case, Strick. Williston, Selections on Contracts, Student Edition, § 621; Restatement, Contracts § 236; *In re F.H. McGraw & Co.*, 473 F.2d 465, 468 (1973). At best, the striking of the Rule of 78's clause renders the contracts ambiguous. This ambiguity must be resolved in favor of Modern. Nor are we persuaded by Strick's argument that Modern agreed to a modification of these contracts by accepting a rebate based upon the Rule of 78's in one instance in 1975. Oral modification of a written contract must be of such specificity and directness as to leave no doubt of the intention of the parties to change what they had previously solemnized by a formal document. *Gloeckner v. School District of Township of Baldwin*, 405 Pa. 197, 199, 175 A.2d 73, 75 (1961).

For these reasons we find that a rebate based upon straight line calculation is due Modern from Strick.

## II

■ The second issue raised by the parties is whether Strick is entitled to the 15% selling expense or overhead charge in the amount of $169,235.18 which it has deducted from the gross sales price realized by the resale of trailers. The language of the contract specifically allows Strick to deduct reasonable expenses of sale, retaking, repairing, reconditioning, keeping and storing of the equipment and attorney's fees. In the Stipulation of Facts and Issues, Strick has characterized the deduction in question as an overhead charge. Clearly, the contract does not include overhead charges as allowable claims against the gross proceeds. Strick contends in its brief that the deduction was a sales commission paid to Strick Finance, its outside agent on the sale. However, an item identified as commissions actually paid to third parties in the amount of $10,822.93 has also been deducted from the gross proceeds. We find that the 15% charge made by Strick was not proper under the contracts.

## III

■ The third issue presented to this Court is whether any interest is due to Strick under the third contract. This question is addressed by our initial finding that the third contract became null and void under its own terms when all of its conditions were not met. In effect, the parties agreed to rescind upon default and rely upon the 1973 contracts as dispositive of their rights. Pennsylvania recognizes that the surrender of mutual rights under an existing contract is sufficient consideration for the cancellation of one contract and the substitution of one with different terms. *Kirk v. Brentwood Manor Howes, Inc.*, 191 Pa.Super. 488, 491, 159 A.2d 48, 52 (1960). Restatement, Contracts § 406 Comment A. The actions of the parties in effecting the transfer of possession of the trailers without reference to any right to payment due under the third contract are consistent with an intent to rescind according to the agreement. We find that no interest is due to Strick under the third contract.

## IV

Our decisions on the foregoing issues in favor of Modern renders it unnecessary for us to reach the issue of whether Strick is barred from any recovery herein by its failure to file a proof of claim.

## V

Based upon the foregoing, we adopt the accounting submitted by Modern as Exhibit "F" in the Stipulation, and find that Strick is indebted to Modern in the sum of $250,052.14.

Exhibit "F"
per Modern

| | |
|---|---|
| Contract No. 1 | $1,172,888.45 |
| Interest | 492,613.15 |
| | 1,665,501.60 |
| Less Payments | |
| on account | 863,751.05 |
| | 801,750.55 |
| Less Interest | 492,613.15 |
| | 309,137.40 |
| Add Interest | |
| Straight Line | 222,808.92 |
| | 531,946.32 |
| Add Principal | |
| Contract No. 2 | 286,292.00 |
| | $ 818,238.32 |

| Selling Price | $1,128,234.50 |
| Reconditioning | − 49,119.11 |
| Outside Commission | − 10,822.93 |

Net Proceeds of Sale of trailers after deduction of commissions and reconditioning costs  $1,068,290.46

(250,052.14)