454 A.2d 1044

MOTOR COILS MANUFACTURING CO., a corporation

v.

The AMERICAN INSURANCE COMPANY, a corporation, and Fireman's Fund American Insurance Company, a corporation, Appellants.

Superior Court of Pennsylvania.

Argued April 15, 1980.

Filed Dec. 23, 1982.

570

James A. Mollica, Jr., Pittsburgh, for appellants.

Charles Gibbons, Pittsburgh, for appellee.

Before PRICE, BROSKY and MONTGOMERY, JJ.

PRICE, Judge:

This appeal is from a judgment granted upon the whole record in favor of Motor Coils Manufacturing Company ("Motor Coils"), which brought an action in assumpsit to recover the proceeds of a liability insurance policy from appellants Fireman's Fund American Insurance Company and the American Insurance Company ("Fireman's Fund").

Motor Coils is a Pennsylvania corporation in the business of repairing diesel electric locomotive equipment. The business requires the shipping of such equipment between various railroad companies around the nation and Motor Coils' repair shop in Braddock, Pennsylvania. On or about January 10, 1974, Motor Coils purchased a three year term Comprehensive Liability Policy from Fireman's Fund.

Included in the policy issued was an optional coverage entitled "Bailee's Customers Property Floater", ("Floater"), selected by Motor Coils' president on the recommendation of Fireman's Fund agent James Smith because of the nature of Motor Coils' operation. (R. 163). The Floater provided insurance against damage to Motor Coils' customers' property while such property was on Motor Coils' premises, and "while in transit on vehicles owned or operated by" Motor Coils. (R. 2a).

At the time the policy was issued, Motor Coils transported train parts to and from customers' places of business on trucks leased from National Car Rental System and driven by employees of Motor Coils. In March of 1974, Motor Coils terminated its lease agreement with National Car Rental System, and entered into an oral agreement to lease four trucks from Clauzell Trucking Company ("Clauzell") on an exclusive basis. Clauzell, rather than Motor Coils, supplied drivers for the trucks, and each shipment was confirmed with a "Proof of Lease Agreement" in the possession of the Clauzell driver. Also under the new arrangement, Motor Coils: paid for any necessary state permits; advanced money to Clauzell to pay the drivers (without deducting social security or withholding taxes); instructed the drivers as to when and where equipment was to be

collected and delivered, but not as to specific routes or the manner of driving the truck. Motor Coils' name appeared on the doors of the truck cabs.

On July 25, 1976 a truck owned by Clauzell and carrying property of a Motor Coils customer under the above lease arrangement[1] was en route from a Motor Coils' Shop to Atlanta, Georgia. The truck was involved in an accident on the Pennsylvania Turnpike which resulted in extensive damage to the property of a Motor Coils customer. Motor Coils submitted a claim to Fireman's Fund under the Bailee's Customers Property Floater section covering damage to customers' property "while in transit on vehicles owned or operated by the insured." The claim was denied for the stated reason that the truck used to transport the property was not "owned or operated by" Motor Coils, but was owned (not in dispute) and *operated by* Clauzell Trucking Co., so that Motor Coils' policy did not cover the damage resulting from the accident.

Motor Coils filed a complaint in assumpsit, and after Fireman's Fund's demurrer to the complaint was overruled, damages were stipulated by the parties at $49,000.[2] At the close of Motor Coils' case, Fireman's Fund's motion for a compulsory non-suit was denied; at the close of Fireman's Fund's case, Motor Coils' motion for a directed verdict was also denied. Both parties then requested binding jury instructions which were refused by the court.

The court instructed the jury, first, that the contract term requiring that vehicles be "operated by" the insured is ambiguous as a matter of law "in that there is no definition of [the] key word within the agreement; and, therefore, the language of the contract must be interpreted in favor of the insured and a broad definition given to the undefined

1. For shipments passing through the state of Virginia, such as the shipment during which the accident occurred, the name of Motor Coils' agent, McDonald Railway Supply, appeared on "Proof of Lease Agreements" and state permits as the designated carrier.

2. The policy's coverage limit under the applicable section was $50,000, with a deductible amount of $1,000.

word." (R. 395–96). Second, the jury was charged to resolve the question of who operated "[i]n other words ... maintained direction and control" of the truck, Motor Coils or Clauzell. (R. 399).

Following approximately eight hours of deliberation, the jury reported it was unable to reach a verdict and was dismissed. Both Motor Coils and Fireman's Fund then moved for judgment upon the whole record pursuant to the Act of June 3, 1971, P.L. 125, 12 P.S. § 684.[3] Judgment upon the whole record was entered for Motor Coils after the trial court[4] found the evidence at trial to be irrelevant to interpretation of the policy term "operated by", leaving no question of fact for the jury to resolve. The court examined the contract and determined that in using the term "operated by", the parties to the insurance policy contemplated Motor Coils' use of carriers or bailees for hire, such as Clauzell.

In this appeal, Fireman's Fund contends the court below erred in deciding an issue that was properly reserved to the jury. We disagree and hold that the court below correctly granted judgment upon the whole record by itself, after determining the intended meaning of the term "operated by the insured" from the policy itself.

The statutory basis for judgment on the whole record is found in the Act of April 20, 1911, P.L. 70, § 1, *as amended*, Act of June 3, 1971, P.L. 125, No. 6, § 1, 12 P.S. § 684, which provides that:

> Whenever upon the trial of any issue a point requesting binding instructions has been reserved or declined, and the jury have disagreed, the party presenting the point may, within the time prescribed for moving for a new trial, or within such other or further time as the court shall allow, move the court to have all the evidence taken

---

3. This section was repealed by the Judicial Code, effective after this action was brought.

4. The motions for judgment on the whole record were considered en banc by the Honorable Marion K. Finkelhor and the Honorable Emil E. Narick of the Court of Common Pleas of Allegheny County.

upon the trial duly certified and filed so as to become part of the record, and for judgment in his favor upon the whole record; whereupon it shall be the duty of the court, unless it shall be of opinion that the case should be retried, to so certify the evidence, and to enter such judgment, if any, as under the law should have been entered upon that evidence at the time of trial, at the same time granting to the party against whom the judgment is rendered an exception to the action of the court in that regard. From the judgment thus entered the party against whom it is entered may appeal.

■ In considering Fireman's Fund's appeal from the grant of judgment on the whole record, we note that:

[j]udgment can be entered on the whole record only if the evidence, viewed in the light most favorable to the non-moving party, [here Fireman's Fund] resolving all conflicts therein in his favor, and giving him the benefit of every fact and inference pertaining to the issues involved which may be reasonably deduced therefrom, would not justify a verdict and judgment in his favor.

*DeGregoris v. Stockwell Rubber Co., Inc.*, 235 Pa. Superior Ct. 71, 73, 340 A.2d 570, 571 (1975). *Accord, Bahoric v. St. Lawrence Croation No. 13*, 426 Pa. 90, 230 A.2d 725 (1967). Viewing the record from this perspective, we conclude that judgment on the whole record was properly granted in the instant case.

To decide whether Motor Coils and Fireman's Fund anticipated Motor Coils' "operation by" use of a carrier such as Clauzell, we first look to the contract. See *Gonzalez v. United States Steel Corp.*, 484 Pa. 277, 290, 398 A.2d 1378, 1385 (1979).

The cardinal rule of contract construction is that the intent of the parties at the time they contracted is controlling. [T]he intent of the contracting parties is exclusively determined from the written instrument if its words are clear and unambiguous.

*Spatz v. Nascone*, 283 Pa.Superior Ct. 517, 424 A.2d 929, (1981), quoting, *Chuy v. Philadelphia Eagles Football*

*Club*, 595 F.2d 1265, 1271 (3d Cir.1971) (citation omitted). *Accord, Steuart v. McChesney*, 498 Pa. 45, 444 A.2d 659 (1982). *Litwack v. Litwack*, 289 Pa.Superior Ct. 405, 433 A.2d 514 (1981);

Here, however, the language of the written agreement, requiring vehicles to be "operated by the insured" in order to be covered under the policy, was found by the court below and agreed by the parties to be ambiguous. First, the term "operated by," standing alone, does not have a single "generally prevailing meaning." The Restatement (Second) of Contracts (Rev. ed. 1981) in Section 201, comment (a), provides that "[u]nless a different intention is shown language is interpreted in accordance with its generally prevailing meaning." Regarding the word "operate", however, the United States Supreme Court has stated:

> The word "operate" has varying meanings according to the context. One may operate singly with his own hands, or jointly with another, or through one or more agents.

*State Farm Mutual Automobile Insurance Company v. Coughran*, 303 U.S. 485, 491, 58 S.Ct. 670, 672, 82 L.Ed. 970 (1938) (citation omitted). The term's meaning is not determined in a vacuum. When interpreting a contract to ascertain the intention of the parties, effect must be given to all the provisions of the contract. *Robert F. Felte, Inc. v. White*, 451 Pa. 137, 302 A.2d 347 (1973). A reading of the entire Floater policy does not, however, reveal the meaning of the ambigous term. Moreover, a "Perils Excluded" section of the policy prohibits narrowing the scope of "operation" of vehicles by the insured to include only physical control by company employees. The "Perils Excluded" provisions exclude coverage of otherwise protected property when damage results from, e.g., dishonesty, theft or unexplained disappearance, *"except in the custody of carriers or other bailees for hire."* (R. 2a, 3a) (emphasis added). Reading these clauses in conjunction with the requirement that vehicles be "operated by" the insured does not eliminate the ambiguity, but allows the conclusion that

the parties contemplated the insured's "operation by" use of carriers or bailees for hire.

■ Because the contractual term was found to be ambiguous, extrinsic evidence was properly admitted in an attempt to resolve the ambiguity. *Spatz v. Nascone*, 283 Pa.Superior Ct. 517, 424 A.2d 929 (1981). Although the intent of the parties to a contract is normally a question for the court, *Gonzalez v. United States Steel Corp.*, 484 Pa. 277, 290, 398 A.2d 1378, 1385 (1981), it becomes a jury question if it is ambiguous and its resolution depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence. *Id.*[5]

Here, extrinsic evidence was admitted to ascertain whether the Motor Coils—Clauzell leasing arrangement was contemplated in the policy term requiring operation of vehicles by Motor Coils.

The bulk of the evidence admitted at trial was undisputed and referred to the details of the relationship between Motor Coils and Clauzell, outlining which party was responsible for driving, routing, instructing drivers as to destina-

---

**5.** As the Pennsylvania Supreme Court has noted, the allocation of functions between judge and jury does not necessarily involve a "fact-law" distinction:

> It has long been accepted in contract law that an ambiguous written instrument presents a question of fact for resolution by the finder-of-fact, whereas the meaning of an unambiguous written instrument presents a "question of law" for resolution by the court. As the authorities in the field of contracts make clear, however, the latter exercise is also in actuality a factual, not a legal, decision. For a variety of reasons the common law has long thought it best to leave to the court rather than to the jury the essentially factual question of what the contracting parties intended. This fact-finding function exercised by the court is denominated a "question of law," therefore, not because analytically it is a question of law but rather to indicate that it is the trial judge, not the jury, to whom the law assigns the responsibility for deciding the matter. All questions of interpretation of written instruments and agreements, in other words, are questions of fact, some in ordinary civil litigation resolved by the jury (ambiguous writings) and others resolved by the trial judge (unambiguous writings).

*Commonwealth College of Beaver County v. Society of Faculty*, 473 Pa. 576, 375 A.2d 1267 (1977).

tions, etc. This evidence is not helpful, however, to the fundamental question of what Motor Coils and Fireman's Fund intended by the term "operated by"; there was no evident contact or understanding between the parties regarding coverage of such an arrangement.[6] An understanding of that intent was prerequisite to determining the significance of the Motor Coils—Clauzell leasing arrangement. A review of the record reveals that the balance of the evidence presented, was also of no benefit in deciding what the parties contemplated by the term. The record does make it clear that Motor Coils was covered as "operating" vehicles while its own employees drove trucks leased from National Car Rental, as the sale of the policy while that arrangement existed was approved by Fireman's Fund. (R. 196, 243).

■ Beyond this, neither Motor Coils nor Fireman's Fund presented any evidence as to their intention for the scope of coverage under the term "operated by the insured", save the testimony of a Fireman's Fund underwriting supervisor, Vincent McGowan. McGowan testified that the "carrier or bailee for hire" clauses of the policy did not apply to the coverage of property "in transit operated by the insured," but only to other coverages in the Floater which were not purchased by Motor Coils. The policy contained no such express limitation on the applicability of the "carrier or bailee for hire" language, however, and McGowan's personal belief is irrelevant to the issue of the meaning intended by the parties to the contract:

Section 230 of the first Restatement states specifically that oral statements by parties of what they intended written language to mean should be excluded. This is so because the intention of a party relevant to the formation of a contract is the intention manifested by him rather

---

6. Motor Coils' president testified that he notified James Smith, agent for Fireman's Fund, of the change to the new lease arrangement, and that Smith did not recommend a change in Motor Coils' transit insurance. (R. 41). Smith did not, however, have the power under his particular contract to act on behalf of Fireman's Fund under the circumstances, without Fireman's Fund's approval. (R. 195).

than any undisclosed intention. Thus, it was the documentary evidence of [the party's] words and conduct before, during, and after the transaction that was relevant, not his testimony of what his undisclosed intention was at the time he wrote those words ...

*Spatz v. Nascone*, 283 Pa.Superior Ct. 517, 543, 424 A.2d 929, 942, (1981). Thus the trial court properly disregarded the testimony of McGowan, in considering the motions for judgment on the whole record, and correctly concluded that the testimony at trial "[did] not shed light on the meaning of the undefined term. Therefore, there was nothing for the jury to resolve." (Op., Brief of Appellant at 33). *Cf. Gonzalez v. United States Steel Corp.*, 484 Pa. 277, 398 A.2d 1378 (1979) (extrinsic evidence sufficient for jury question of whether use of certain equipment was contemplated in demolition contract.)

Because there was insufficient extrinsic evidence to enable a jury to clarify the parties' intent as to the ambiguity, the issue was properly decided by the court, which construed the ambiguity against Fireman's Fund, as the drafter of the policy. Where extrinsic evidence fails to clarify an ambiguous instrument, the ambiguity is construed most strongly against the drafter of the instrument. *Burns Manufacturing Co., Inc. v. Boehm*, 467 Pa. 307, 313 n. 3, 356 A.2d 763, 766 n. 3, (1976). *See In re Estate of Breyer*, 475 Pa. 108, 116, 379 A.2d 1305, 1310 (1977).[7]

7. The Restatement (Second) of Contracts § 206 (Rev. ed. 1981) states:

Where one party chooses the term of a contract, he is likely to provide more carefully for the protection of his own interests than for those of the other party. He is also more likely to have reason to know of uncertainties of meaning. Indeed, he may leave meaning deliberately obscure, intending to decide at a later date what meaning to assert. In cases of doubt, therefore, so long as other factors are not decisive, there is substantial reason for preferring the meaning of the other party. The rule is often invoked in cases of standardized contracts and in cases where the drafting party has the stronger bargaining position, but it is not limited to such cases.

*Id.* at comment a.

Moreover, insurers are more likely than insureds to participate in drafting prescribed forms and to review them carefully before putting them into use.

*Id.* at comment b.

■ Judgment on the whole record is properly granted only if binding instructions should have been given at the trial. *Hogan v. Bryn Mawr Hospital,* 250 Pa.Superior Ct. 109, 116, 378 A.2d 477, 481 (1977). Binding instructions are appropriate where there is no question of fact properly submissible to the jury. *Id.; Lambert v. Pittsburgh Rys. Co.,* 405 Pa. 364, 367, 175 A.2d 870, 872 (1961). In order to conclude there is no factual question properly submissible to the jury, the evidence, viewed in the light most advantageous to the non-moving party must be such that it would not justify a verdict and judgment for the non-moving party. *Hogan v. Bryn Mawr Hospital, supra; DeGregoris v. Stockwell Rubber Co.,* 235 Pa.Superior Ct. 71, 340 A.2d 570 (1975). In the instant case, the extrinsic evidence admitted did not elucidate the intended meaning of the ambiguous policy term "operated by the insured." The record shows that the parties agreed to insure Motor Coils' shipping of customers' property, which at the time the policy was issued involved the use of leased trucks driven by Motor Coils drivers. "[G]reat weight is placed on the principal purpose of the parties if this purpose is ascertainable." *Spatz v. Nascone,* 283 Pa.Superior Ct. 517, 539, 424 A.2d 929 (1981). There was no evidence that Motor Coils' coverage ceased when it began to lease both trucks *and* drivers. The trial court thus properly construed the policy against its drafter in finding that Motor Coils' coverage included "operation" of vehicles by using "carriers or bailees for hire."[8]

In the instant case, the factual question of the intended meaning of "operated by the insured" in light of the evi-

8. Much of Fireman's Fund's attention in its appellate brief has been devoted to an asserted illegality (involving Interstate Commerce Commission regulations) in the Motor Coils-Clauzell relationship. We do not believe such illegality, if proven, would nullify the insurance coverage. *See Mohn v. American Casualty Co.,* 458 Pa. 576, 326 A.2d 346 (1974); *Eisenman v. Hornberger,* 438 Pa. 46, 264 A.2d 673 (1970). See generally 17 Am.Jur.2d § 159. ("In general, unless a contract necessarily contemplates an illegal act it is not unenforceable.") Nor do we believe any intent of Motor Coils to avoid I.C.C. regulation would reflect on the intended meaning of the ambiguous term.

dence on the record was properly the subject of binding instructions. Therefore, judgment on the whole record was properly granted for appellee.

Judgment affirmed.

BROSKY, J., files a concurring opinion.

BROSKY, Judge, concurring:

I concur in the majority opinion.

I will make only one observation supporting the conclusion the majority has reached here.

The majority opinion states: "Where extrinsic evidence fails to clarify an ambiguous instrument, the ambiguity is construed most strongly against the drafter of the instrument." While the application of this general principle was not inapropos, there is a more particular rule of law which should be brought to bear here.

... exceptions to the general liability of the insurer are to be strictly construed against the insurance company. *Frisch v. State Farm Fire & Casualty Co.*, 218 Pa.Super. 211 at 214, 275 A.2d 849 at 851 (1971) (Montgomery, J.). See also *Miller v. Prudential Insurance Co. of America*, 239 Pa.Super. 467 at 471, 362 A.2d 1017 at 1020 (1976).

The rule stated in *Frisch* is on point and should form part of the basis for our decision here.

I concur.