J-S22001-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: CECELIA KLINE, AN INCAPACITATED PERSON | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: ANGELA BIROS | : : : : : : | |
| | : | No. 1276 MDA 2018 |

Appeal from the Order Entered June 28, 2018
In the Court of Common Pleas of Berks County
Orphans' Court at No(s): 83221

BEFORE:   SHOGAN, J., DUBOW, J., and PELLEGRINI*, J.

MEMORANDUM BY SHOGAN, J.:                    **FILED JUNE 21, 2019**

Appellant, Angela Biros, appeals from an order entered on June 28, 2018, in the Berks County Court of Common Pleas.  The underlying matter involves the guardianship and estate of Ms. Cecelia Kline ("Kline" or "Ms. Kline"), an incapacitated person, the removal of Appellant as guardian, and the imposition of a surcharge.  The June 28, 2018 order denied Appellant's exceptions to a Master's Report and Recommendation and imposed a surcharge upon Appellant in the amount of $14,825.  We affirm.

A prior panel of this Court provided the following factual and procedural background:

> [Appellant] is the great-niece of Kline.  This matter arose when Kline's great-niece, Pamela Rokoskie [("Rokoskie")], who is [Appellant's] sister, petitioned the court to declare Kline an incapacitated person and appoint a plenary guardian.  The orphans' court's opinion sets forth the background of this case, as follows:

_____
*   Retired Senior Judge assigned to the Superior Court.

This guardianship matter began its tortuous path on July 9, 2013, when [Ms.] Kline's great-niece, [Rokoskie], filed a Petition for Adjudication of Incapacity and Appointment of Plenary Guardian for Ms. Kline. A hearing was scheduled for August 21, 2013. Apparently an off-the-record indication was made to the Court that the matter would be contested in some fashion because on July 26, 2013, the Court appointed counsel for Ms. Kline.

On August 21, 2013, [Appellant], another great-niece, filed Response/Objections to the Petition indicating that she is the agent under Ms. Kline's power of attorney, that Ms. Kline is not incapacitated, and that even if Ms. Kline is incapacitated there is no need for a guardian because her needs are met. After some off-the-record discussion, the hearing was continued to September 27, 2013.

On September 27, 2013, the parties took some time to reach an agreement regarding Ms. Kline's incapacity and who should serve as her guardian. The parties stipulated to the expert report, which concluded Ms. Kline was incapacitated and in need of a guardian. The parties agreed that [Appellant] would be appointed guardian of Ms. Kline's person and estate. The parties also agreed to terms regarding family visits with Ms. Kline. The Court directed that [Appellant] file an inventory and accounting within four months, and provided for the payment of fees to the doctor and Ms. Kline's court-appointed counsel. Although the Court ordered the appointment of [Appellant] as guardian for Ms. Kline and directed the submission of a written order to that effect, counsel did not submit a written order.

On March 25, 2014, Rokoskie's attorney requested the transcript of the September 27, 2013 hearing. On April 23, 2014, Rokoskie filed a Petition for Special Relief to Memorialize Settlement Agreement to an Order of Court and Contempt of Court Order. Rokoskie alleged that she, through counsel, made several attempts to memorialize the parties' agreement into a stipulated order, but [Appellant]

refused to sign. Rokoskie also averred a failure by [Appellant] to file an inventory and accounting, to pay Ms. Kline's attorney, Mr. Grenko, and to allow visits with Ms. Kline as agreed. Rokoskie requested an order to enforce [Appellant's] compliance with the September 27, 2013 agreement or to remove [Appellant] as guardian. A hearing on the Petition for Special Relief was scheduled for June 12, 2014.

On June 10, 2014, [Appellant] filed an Answer to the Petition for Special Relief, an Inventory, and a First Account for the period of September 27, 2013 to January 31, 2014. After argument/hearing, the Court directed counsel to submit an order appointing [Appellant] as Ms. Kline's guardian, directing [Appellant] to file an account for the time period of April 22, 2013 through the present, and otherwise memorializing the terms of the September 27, 2013 agreement, including payment of Mr. Grenko. That Order was signed on June 24, 2014.

On July 7, 2014, [Appellant] filed a Motion for Reconsideration alleging the existence of discrepancies in the written order as compared to the Court's oral instructions. On July 11, 2014, the Court issued an Order slightly modifying certain terms contained in the June 24, 2014 Order.

On July 21, 2014, [Appellant] filed Objections to Mr. Grenko's itemized bill. On July 28, 2014, Mr. Grenko filed an Answer to the objections and attached his invoice. On July 31, 2014, the Court ordered [Appellant] to pay Mr. Grenko a slightly discounted sum from Ms. Kline's estate within ten days or face surcharge.

On August 27, 2014, [Appellant] filed a First Amended Account for the period of April 22, 2013 to August 22, 2014. On November 10, 2014, Rokoskie filed a Petition for Special Relief and Contempt of Court Order. Rokoskie averred a list [of] 30 payments or withdrawals from Ms. Kline's funds that did not appear in the August 27, 2014 account. Rokoskie averred that [Appellant] made payments to herself and to her

daughter and liquidated certificates of deposit without accounting for the liquidated sums, which exceeded $123,000. Rokoskie also averred [that Appellant moved] Ms. Kline from her home to [an] undisclosed facility. Rokoskie requested that [Appellant] be removed as guardian and agent under power of attorney and be ordered to return certain sums to Ms. Kline and comply with Rokoskie's Request for Production of Documents that was issued in July 2014.

On November 20, 2014, a rule was issued upon [Appellant] to show cause why she should not be held in contempt of court, be removed as guardian and agent, and be ordered to return assets and produce discovery. The rule was returnable December 12, 2014, and a status conference was set for December 17, 2014. After the conference, the Court entered an order directing [Appellant] to produce requested discovery, capping payment of monthly expenses not directly related to Ms. Kline's care, and prohibiting [Appellant] from receiving any payments for her services as guardian. Counsel were given time to attempt an amicable resolution.

On February 11, 2015, the Court scheduled a hearing on the Petition for Special Relief and Contempt of Court Order for March 18, 2015. On request of [Appellant's] counsel, the hearing was continued to March 25, 2015. The Court also froze Ms. Kline's accounts.

Orphans' Court Opinion, 6/11/2015, at 1–4.

The hearing in this matter took place on March 25, 2015. On the same day, the orphans' court removed [Appellant] as guardian for Kline and appointed a third-party, Mark R. Sprow, Esquire, as Kline's guardian. The court also found that because of [Appellant's] waste and mismanagement of the estate, a surcharge was appropriate. The court ordered the surcharge amount would be determined by the parties or, failing that, a master. **See** Order, March 25, 2015. This appeal followed.

***In re Kline***, 136 A.3d 1028, 772 MDA 2015 (Pa. Super. filed January 8, 2016) (unpublished memorandum at 3-6) (internal footnotes omitted). In that prior appeal, this Court concluded that there was no basis upon which to disturb the orphans' court's order removing Appellant as guardian or its conclusion concerning a surcharge. ***Id.*** at 19. However, the task of determining the amount of a surcharge was "left open." ***Id.*** at 2, n.3.

Following this Court's January 8, 2016 decision, the matter returned to the orphans' court for a resolution of the surcharge issue. The orphans' court explained:

> [Appellant] served as guardian of the person and estate of [Ms. Kline]. Pursuant to a Petition for Special Relief and Contempt of Court filed by Ms. Kline's niece, Pamela Rokoskie, the Honorable Peter Schmehl found "that a surcharge against [Appellant] is appropriate for waste and apparent mismanagement of Ms. Kline's estate. Within the next thirty days, counsel for the parties shall review the financial records of this matter and negotiate an appropriate surcharge amount for consideration and approval by the [c]ourt. Failing the ability to reach an amicable surcharge amount, the [c]ourt will appoint a master to make findings and a recommendation to the [c]ourt regarding surcharge."
>
> The parties were unable to reach an agreement and a hearing was held before Hearing Master Mark Morolla, Esq. on October 13, 2017. The Master, after considering all of the evidence and documents presented, determined that a surcharge in the amount of [$14,825.00] was appropriate. On January 8, 2018, [Appellant], through her attorney, filed exceptions to the Master's Report. This [c]ourt conducted a hearing on June 28, 2018 and after argument denied [Appellant's] exceptions finding that she was liable to the Estate of Cecelia Kline for a surcharge in the amount of Fourteen Thousand Eight Hundred Twenty Five Dollars ($14,825.00). The instant appeal ensued.

Orphans' Court Opinion, 9/21/18, at 2-3. Both the orphans' court and

Appellant complied with Pa.R.A.P. 1925.

In the instant appeal, Appellant raises the following issue for this Court's

consideration:

> A. Whether the [orphans'] court committed an error of law, or
> abused its discretion, when it denied [Appellant's] exceptions to
> the report of the Master, entered judgment against [Appellant] in
> the amount of $14,825.00 and concluded that said report was
> compliant with the scope and purpose as ordered by the
> Honorable Peter W. Schmehl, on April 21, 2017, "being that the
> Master was to determine an appropriate amount of surcharge due
> the estate" because said findings were not supported by
> substantial evidence of record?

Appellant's Brief at 4 (full capitalization and internal ellipses omitted).

The standard we apply when reviewing an order from the orphans' court

is as follows:

> We accord the findings of an Orphans' Court, sitting without a jury,
> the same weight and effect as the verdict of a jury. Thus, we will
> not disturb those findings absent manifest error. We shall modify
> an Orphans' Court order only if the findings upon which the order
> rests are not supported by competent or adequate evidence or if
> the court engaged in an error of law, an abuse of discretion, or
> capricious disbelief of competent evidence.

*In re Marsh*, 175 A.3d 993, 996 (Pa. Super. 2017) (citation omitted).

The orphans' court thoroughly addressed Appellant's claim of error as

follows:

> [Appellant] complains on appeal that this Court committed
> an error of law and/or abused its discretion, when it concluded
> that the Master's Report was compliant with the Honorable Peter
> W. Schmehl's order of April 21, 2017. In that order the Judge
> directed that Master Merolla "shall communicate with the Guardian
> and counsel for the parties to determine an appropriate surcharge

- 6 -

amount due the incapacitated person's estate from her former Guardian, [Appellant], and shall communicate his findings and recommendation to this Court." Master Merolla did precisely what the Court directed him to do. He conducted a full hearing, took testimony, and reviewed exhibits. He questioned [Appellant] about her mismanagement of Ms. Kline's estate and reviewed specific accounts and purchases with counsel present. Master Merolla's findings, and subsequently, this Court's affirmation of his report are supported by the record.

[Appellant] further argues that [t]his Court committed an error of law and abused its discretion when it concluded that [Appellant] was liable to Ms. Kline for a surcharge in the amount of $14,825.00 and further when it concluded that the Master's findings of waste and mismanagement as well as the resulting amount of surcharge were support[ed] by substantial evidence of record. This issue has been argued and addressed ad nauseum. In fact, the learned Superior Court, while not ruling specifically on this issue, did note in its decision filed January 8, 2016 in this same matter that:

> ...the evidence showed that during the guardianship period [Appellant] paid herself from Kline's funds multiple times, including a number of flat $1,000.00 payments for assistance to Kline. [Appellant] testified, [Ms. Kline] requested these checks to be written to me and it was for cumulative things, of taking care of her, taking care of the property, doing everything for her. She made the decision of what the amount is. N.T., 3/2/15 at 20. However, there is no evidence that [Appellant] sought or was granted court approval for these payments as required under the PEF Code ...[.] In addition, although [Ms.] Kline had not lived in her home for over one-and-one-half years and her residential care was $10,500.00 monthly at the time of the hearing, the residence remained vacant and property related expenses continued to be paid. The residence was not rented to anyone, and [Appellant] had the power to lease [Ms.] Kline's residence.

[***In re Kline***, 136 A.3d 1028, (unpublished memorandum at 7) (internal quotation marks omitted)].

- 7 -

Further, in that same opinion, the Superior Court recounted a partial excerpt from the Honorable Peter Schmehl's trial court opinion. Stating:

At the hearing on March 25, 2015[, Rokoskie] called [Appellant] as the first witness as on cross examination. Much of the examination concerned entries in a check register. [Appellant] explained certain entries as describing expenses incurred for toiletries, groceries, and lawn maintenance. Some of the purchases were made by Ms. Kline with a credit card, even after she was adjudicated incapacitated. Other purchases were paid by [Appellant] at Ms. Kline's direction.

[Appellant] let Ms. Kline do her own banking...[.] In July and/or August 2014, [Appellant], who had acted as agent under the power of attorney prior to her appointment as guardian of [Ms.] Kline, had at least one of Ms. Kline's bank accounts re-titled as a joint account with [Appellant] and/or had [Appellant] added as a [Payable on Death Account ("POD")] beneficiary as Ms. Kline allegedly wished.

[Appellant] stated that monies that she paid to herself and her daughter were paid at Ms. Kline's direction upon terms set by Ms. Kline. For example, in deciding to pay herself for yard work performed, [Appellant] asked Ms. Kline, the adjudicated incapacitated person, what she would pay for the services in order to set her pay scale. [Appellant] also accepted money from Ms. Kline on account of [Appellant] caring for her. [Appellant] acknowledged several $1,000 payments to herself for services rendered, but she never obtained a court order authorizing payments to herself. [Appellant] repeatedly testified that the checks written to herself were written at Ms. Kline's request and that Ms. Kline decided the amounts.

[Appellant] acknowledged that Ms. Kline is no longer occupying her residence. [Appellant] testified that she continued to maintain the residence at Ms. Kline's direction rather than sell the wasting

asset. [Appellant] had no plans or intentions to sell the real estate.

...On cross-examination, it was revealed that [Appellant] was convicted of welfare fraud approximately 11 years ago.

...The Incapacitated person should not be the decision-maker, or the banker, or the bill-payer...[.] The guardian also cannot be self-dealing with the incapacitated person's funds. If [Appellant] had legitimate reason to be paying herself anything, she should have obtained court approval first. [Appellant] had a duty to safeguard Ms. Kline's estate for Ms. Kline, not for [Appellant].

[*In re Kline*, 136 A.3d 1028, (unpublished memorandum at 3-4)], citing Orphan's Court Opinion, 6/11/2015, at 4-5 [(internal quotation marks omitted)].

While the above is a lengthy recitation of the prior history of the case, it bears reiteration because even now, almost three (3) years after that opinion was penned, [Appellant] still inexplicably argues that a surcharge in the amount of fourteen thousand eight hundred and twenty five dollars ($14,825.00) was not appropriate and further that no surcharge at all was warranted. This defies logic.

In the performance of his fiduciary duties, the fiduciary must exercise the "judgment, skill, care and diligence that a reasonable or prudent person would ordinarily exercise in the management of his or her own affairs." *In re Estate of Campbell*, 692 A.2d 1098, 1101-02 (Pa. Super. 1997). A surcharge is the penalty imposed by the court for the failure of a fiduciary to meet his duty of care owed his estate. As noted in *Miller's Estate*, 345 Pa. 91, 95, 26 A.2d 320, 321 (1942), "Surcharge is the penalty for failure to exercise common prudence, common skill and common caution in the performance of the fiduciary's duty and is imposed to compensate beneficiaries for loss caused by the fiduciary's want of due care." *Estate of Stephenson*, *supra*, 469 Pa. at 138, 364 A.2d at 1306. A fiduciary is permitted "reasonable and just" compensation for services rendered. *In Re Ischy Trust*, 490 Pa. 71, 82, 415 A.2d 37, 42 (1980); *Williamson Estate*, 368 Pa. 343 349, 82 A.2d 49 (1951); *See*, 20 Pa.C.S.A. § 7185(a). However,

the fiduciary's claim to recompense should be based on actual services, not an arbitrary formula. *In Re Estate of Breyer*, 475 Pa. 108, 379 A.2d 1305, 1311 (1977); *In Re Ischy Trust*, 415 A.2d at 42; *In Re Reed*, 467 Pa. 371, 357 A.2d 138, 142 (1976); *In re Estate of Sonovick*, 373 Pa. Super. 396, 399 (Pa. Super. Ct. 1988). Under Pennsylvania law, the determination of whether the compensation claimed by the fiduciary is "reasonable and just" is left to the sound discretion of the trial court. *In Re Estate of Breyer*, 379 A.2d at 1311; *In Re Ischy Trust*, 415 A.2d at 42-43; *In Re Etate of Loutsion*, 344 Pa.Super. 477, 496 A.2d 1205, 1206 (1985).

Master Merolla painstakingly combed through the bank records of Ms. Kline and the purchases of [Appellant] to determine which of those purchases were not appropriate. He separates his report into three tables. "Table A" included the transactions completed by checks or included within the first amended account, for the months when bank statements were not available from October 2013 to May 2014. "Table B" included electronic transactions included within the bank record and "Table C" included balances of Ms. Kline's certificates of deposit. Within those tables, the items highlighted in bold were to be included within the surcharge. The majority of the emboldened checks are to [Appellant] for one thousand dollars ($1,000) for "supplies", though some are smaller amounts. There is a "gift" to [Appellant's] daughter in the aggregate amount of one thousand one hundred and thirty one dollars and ninety one cents ($1,131.91). There are also multitudes of small charges including, but not limited to, Walmart purchases, Spa Nails, China Max, Friendly's, A.C. Moore, Jumbo China Buffet, Joann Stores and Hair Cuttery, just to name a few.

What Master Merolla's Report and this Court's own review of the entire record before it makes very clear is that **[Appellant] was comfortably living on Ms. Kline's bill, making purchases and handsomely paying herself in monthly installments, without Court approval. She failed to meet the duty of care she owed to Ms. Kline's estate. [Appellant's] explanation that the purchases and gifts were at the behest of Ms. Kline is simply not credible. This Court is constrained to believe that almost weekly hair appointments, frequent visits to Chinese restaurants, large lump sum payments to [Appellant] and [Appellant's] daughter are indicative of the judgment, skill, care and**

**diligence that [Appellant] would exercise in the management of her own affairs.** This record is devoid of ambiguity. [Appellant] owes the amount of fourteen thousand eight hundred and twenty five dollars ($14,825.00) to Ms. Kline's estate.

Orphans' Court Opinion, 9/21/18, at 4-8 (emphasis added).

As noted above, in disposing of Appellant's prior appeal, this Court stated that the orphans' court "left the surcharge issue open." *In re Kline*, 136 A.3d 1028, (unpublished memorandum at 2, n.3) (citing the Orphans' Court's Order, 3/25/15). In the orphans' court order, it directed as follows:

Within the next thirty days, counsel for the parties shall review the financial records of this matter and negotiate an appropriate surcharge amount for consideration and approval by the Court. Failing the ability to reach an amicable surcharge amount, the Court will appoint a master to make the findings and a recommendation to the Court regarding surcharge.

Order, 3/25/15. In this appeal, Appellant avers that the surcharge was not mandatory, the Master was to determine what amount, if any, should be surcharged, and the evidence was insufficient to support a surcharge of $14,825. Appellant's Brief at 9. Appellant's position is meritless.

It is undisputed that the parties failed to reach a stipulated surcharge. Thus, it was necessary to involve the Master. Order, 3/25/15. The Master discharged his duty as directed by the orphans' court, made credibility determinations, reviewed the financial evidence, and determined an amount for a surcharge. Master's Report, 12/18/17.

Appellant asserts that the Master failed to consider the possibility that a surcharge was unwarranted. Appellant's Brief at 9. This bald claim is

- 11 -

unsupported and specious. There is nothing in the record that prohibited the Master from concluding no surcharge was warranted or awarding a symbolic surcharge of $1.00. However, the Master found that a surcharge in the amount of $14,825 was appropriate. Although Appellant may not be pleased with the Master's determination or the amount of the surcharge, there is substantial evidence supporting the Master's conclusion that a surcharge of $14,825 was appropriate. **See** Master's Report, 12/18/17 (making credibility determinations and examining Appellant's disbursements of Ms. Kiline's funds). Appellant's expenditures for "supplies," direct payments to herself, gifts to her daughter of more than $1,000, and weekly, if not, daily trips to Walmart, restaurants, and hair and nail salons, illustrate the waste and mismanagement of Ms. Kline's assets. Master's Report, 12/18/17, Tables A and B. The orphans' court credited the Master's findings and conclusion. Orphans' Court Opinion, 9/21/18, at 7.

After review, we discern no basis upon which to disturb the orphans' court's order. The evidence established that Appellant mismanaged Ms. Kline's finances, and Appellant's waste warranted a surcharge of $14,825. Appellant's argument to the contrary is meritless and unsupported by the record. Accordingly, Appellant is due no relief, and we affirm the orphans' court's order.

Order affirmed.

- 12 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>06/21/2019</u>