Estate of William Wikoff SMITH, Deceased Sur W.W. Smith Charitable Trust, Appellee.

Appeal of: Mary L. Smith, Co–Trustee, Appellant.

In re: W.W. Smith Charitable Trust Under Will of William Wikoff Smith, Deceased, Appellee.

Appeal of: Wachovia Corporation, Appellant.

Superior Court of Pennsylvania.

Argued Nov. 9, 2004.
Filed April 28, 2005.

James F. Mannion, King of Prussia, for Mary Smith.

John J. Soroko, Philadelphia, for Wachovia.

Lawrence Barth, Philadelphia, for Parens Patriae for Charities.

Robert L. Freedman, Philadelphia, Amicus Curiae, for Pennsylvania Bankers.

Before: DEL SOLE, P.J., HUDOCK, FORD ELLIOTT, JOYCE, STEVENS, LALLY–GREEN, TODD, KLEIN and BOWES, JJ.

BOWES, J.

¶ 1 This matter originated in the Orphans' Court Division of the Court of Common Pleas of Montgomery County in connection with the audit of the Third Account of the W.W. Smith Charitable Trust (the "trust"). On January 28, 2003, the orphans' court issued a final adjudication of the audit. An amended adjudication was filed on February 14, 2003, that incorporated the court's prior rulings issued in the matter. The co-trustees, Mary L. Smith ("Mrs. Smith") and First Union Bank ("First Union"),[1] filed appeals and cross-appeals to the amended adjudication. Mrs. Smith's appeal is docketed at No. 573 EDA 2003, and First Union's appeal is docketed at No. 1330 EDA 2003. The appeals were consolidated.

¶ 2 On December 4, 2003, a majority of a panel of this Court affirmed in part and reversed in part the judgment of the orphans' court. One member of the panel authored a dissenting opinion advocating a directly contrary result. On February 10, 2004, we granted Mrs. Smith's[2] application for reargument and the matter was heard before this Court sitting *en banc*. After careful consideration of the briefs and arguments of the parties, we will affirm in part and reverse in part the judgment of the orphans' court.

I. **History of the Case**

¶ 3 In a June 8, 1973 codicil to his will, William Wikoff Smith announced his intention to create a perpetual charitable trust for, *inter alia,* relief of the needy, college scholarships, and medical research. When he died in 1976, his wife, Mary Smith, and First Union Bank, as successor-in-interest to Philadelphia National Bank and Corestates Bank, N.A., were named as co-trus-

---

1. While the appeal was pending, First Union merged with Wachovia Corporation. On April 19, 2004, First Union filed a Notice of Name Change to reflect that the merged entity is now known as Wachovia Corporation. We will continue to refer to the corporate trustee as First Union to maintain continuity among the various opinions filed in this matter to date.

2. The Attorney General, on behalf of the Commonwealth as *parens patriae* for charities, also petitioned for reargument.

tees as per the terms of Mr. Smith's will. The trust was funded initially with shares of convertible voting common stock of Kewanee Oil. In 1977, the trustees decided to sell the Kewanee Oil stock and invest the proceeds in other securities. These investments increased the value of the trust from $50,741,301 to $169,873,999, in 1998, and to $179,576,657 by 2000.

¶ 4 The will provided that Mrs. Smith, as the individual trustee, would serve without compensation. The corporate trustee's compensation was outlined in Item IV of a codicil to Mr. Smith's will: "My corporate trustee shall be entitled to reasonable compensation annually for services rendered, not to exceed in any year an amount equal to five percent (5%) of the then current annual income of the trust fund."

¶ 5 After First Union, as successor-in-interest to Philadelphia National Bank and Corestates Bank, assumed the trusteeship, it provided the trust with rent-free office space, dedicated two employees to trust administration tasks, and conducted monthly meetings that necessitated First Union investment analysts to travel from North Carolina to Philadelphia. As of January 31, 2002, First Union no longer supplies rent-free space to the trust and has not committed to maintaining the employment of the dedicated trust officer.

¶ 6 Under the terms of the trust, the co-trustees are directed to file an account every fifteen years. On or about August 31, 1999, a third account, covering the period from July 1, 1983, through December 31, 1999, was filed with the orphans' court. In connection with the audit, First Union filed a two-count petition seeking to increase its future annual trustee compensation (Count I) and requesting an award of interim compensation from the principal of the trust for past services rendered, pursuant to Section 7185(b) of the Probate, Estates and Fiduciaries Code (the "PEF Code"), 20 Pa.C.S. § 7185(b)[3] (Count II).

¶ 7 On August 3, 2001, Mrs. Smith filed a motion for partial summary judgment to Count II of the petition, opposing First Union's claim for interim compensation for past services. On November 8, 2001, the orphans' court granted Mrs. Smith's motion, concluding that the law in effect at the time Mr. Smith executed his codicil precluded payment of compensation from the principal of the trust to First Union.

¶ 8 The orphans' court then held an evidentiary hearing on the remaining claims delineated in the fee petition. Regarding First Union's request for future modification, the court ruled that the codicil dictated that corporate trustee compensation, capped at five percent of income, "is no longer realistic" and "that the current compensation to First Union is at such a low rate to tend to defeat the very purpose of the trust to a point where a competent corporate fiduciary would be reluctant to proceed with the trustee's duties because of inadequate compensation." Orphans' Court Opinion, 6/26/02, at 4. The court also ruled that the evidence did not demonstrate that any other corpo-

---

3. § 7185. Compensation

(b) Allowed out of principal or income.—The fact that a fiduciary's service has not ended or the fact that the trust has not ended or the fact that the trust is perpetual shall not be a bar to the fiduciary's receiving compensation for his services out of the principal of the trust. Whenever it shall appear either during the continuance of a trust or at its end, that a fiduciary has rendered services for which he has not been fully compensated, the court having jurisdiction over his accounts, shall allow him such original or additional compensation out of the trust income or the trust principal or both, as may be necessary to compensate him for the services theretofore rendered by him. The provisions of this section shall apply to ordinary and extraordinary services alike.

rate fiduciary was "ready, willing and able" to assume the trusteeship at the designated rate of compensation. *Id.* at 5 (citation omitted). The orphans' court, therefore, modified the compensation provision of the codicil to award the corporate trustee compensation computed at 25/100 of 1% of the total asset value of the trust. The court, however, denied First Union's request for interim principal compensation for past extraordinary services. On appeal, First Union does not question the orphans' court's denial of interim principal compensation for past extraordinary services.

¶ 9 Subsequently, on February 14, 2003, the orphans' court entered an amended adjudication, finalizing all matters concerning the audit of the trust and First Union's tandem petition for compensation. Mrs. Smith filed a notice of appeal at No. 573 EDA 2003 challenging the order of June 26, 2002, which modified First Union's future annual trustee compensation. First Union filed an appeal at No. 1330 EDA 2003 of the orphans' court summary judgment decree of November 8, 2001, which denied First Union's claim for interim principal compensation for past ordinary services.

¶ 10 As noted above, on December 4, 2003, a majority of a panel of this Court affirmed in part and reversed in part the judgment of the orphans' court. On February 10, 2004, we granted Mrs. Smith's application for reargument and the matter was heard before an *en banc* panel of this Court.

## II. First Union's Appeal—No. 1130 EDA 2003

¶ 11 Although belied by First Union's extensive discussion on the evolution of the law in Pennsylvania concerning principal compensation in perpetual charitable trusts, its appeal actually presents a straightforward question of contract interpretation. "[E]ntitlement to trustees' compensation is not a matter of the law of trusts, but of the intent of the parties as evidenced by their contract." *Matter of Lawson,* 414 Pa.Super. 550, 607 A.2d 803, 805 (1992). Thus, the pertinent issue was correctly framed by the orphans' court as follows: "The sole issue presented ... is the proper interpretation of the compensation provision of Mr. Smith's codicil and whether Section 7185(c) [of the PEF Code] precludes the claimed principal." Orphans' Court Opinion, 11/8/01, at 1.

¶ 12 The orphans' court identified the language of 20 Pa.C.S. § 7185(c) as controlling the amount of past trustee compensation to which First Union was entitled. That section reads:

**(c) Compensation prescribed by will or other instrument.—**
Where the compensation of a fiduciary is expressly prescribed either by provisions of a will or deed of trust or other instrument under which he is acting or by provisions of an agreement between him and the creator of a trust, nothing in this section shall change in any way the rights of any party in interest or of the fiduciary.

20 Pa.C.S. § 7185(c). The court determined that this section definitively limited the amount of trustee compensation due First Union to the amount described in Item IV of the codicil; this was "the deal" agreed to by the parties. Orphans' Court Opinion, *supra* at 8.

¶ 13 The court analyzed a triumvirate of decisions, *Kennedy's Trust,* 364 Pa. 310, 72 A.2d 124 (1950), *In Re Reed,* 467 Pa. 371, 357 A.2d 138 (1976), and *Matter of Lawson, supra,* to determine whether their combined rationale authorized payment of trustee compensation from the principal of a perpetual charitable trust. The orphans' court observed that these cases could not

be applied to perpetual trusts, such as the entity at issue here, created prior to 1982 when section 7185(b) was amended to permit interim principal compensation from a perpetual trust in the absence of an express contrary direction. Prior to this amendment, the so-called "Taxis Rule" prohibited any payment from principal. The court thus concluded that section 7185(c) controlled the outcome, despite the statutory evolution of section 7185(b), and entered summary judgment in favor of Mrs. Smith.

¶ 14 We will reverse the entry of summary judgment only where it is established that the court committed an error of law or abused its discretion. *Reeves v. Middletown Athletic Association*, 2004 PA Super 475, ¶ 25, 866 A.2d 1115.

■ ¶ 15 Despite the analytical misstep in its interpretation of the amendments to section 7185(b),[4] we agree with the orphans' court's ultimate conclusion that section 7185(c) precludes trustee remuneration in excess of the amount specifically delineated in Item IV of the codicil.

■ ¶ 16 "[I]f the instrument creating the trust provides what a trustee's compensation shall be, such provision is binding on all parties concerned." *Kennedy's Trust, supra* at 314, 72 A.2d at 126; *Accord Matter of Lawson*, 607 A.2d at 805 (**in absence of agreement by parties**, amount of compensation shall be fixed by court having jurisdiction over trust). The testator's intent is the polestar and must prevail. *In re Burleigh's Estate*, 405 Pa. 373, 376, 175 A.2d 838, 839–40 (1961).

¶ 17 Here, the amount of compensation due First Union for its services to the trust is unambiguously prescribed by the codicil as "an amount no greater than five percent of the current annual income of the trust." The intent of Mr. Smith is crystalline and is not diminished because the paragraph does not specifically preclude payment of additional compensation. The codicil clearly states that compensation is fixed; the wording need not negate all other possibilities. Nor is the precision of the clause diminished by reason that it does not specify whether compensation should be paid from income or principal. The amount due is strictly defined; the issue is not what the contract prohibits, but whether it prescribes the amount of trustee compensation.

¶ 18 The aforementioned triad of cases, *Kennedy, Reed,* and *Lawson,* are offered by First Union to buttress its assertion that there must be an express prohibition on principal commission in order to preclude a claim for such payment. These cases are distinguishable. In *Kennedy,* the question was whether the trustees were entitled to compensation from the corpus at the termination of the trust when the deed of trust was silent as to the compensation payable upon the termination. Two obvious points of distinction from the present matter are apparent: 1) the Smith trust specifically delineates payment of trustee compensation and 2) the Smith trust, a perpetual trust, will not terminate.

¶ 19 The factual scenario and legal outcome in *Reed* are similar to *Kennedy.* The issue in *Reed* was whether the estate of a deceased trustee was entitled to payment from the principal of the trust upon its termination. The Pennsylvania Su-

---

4. Contrary to the orphans' court discussion, the 1982 amendment to section 7185(b) abrogated the "Taxis Rule" and generally permits trustees of perpetual charitable trusts, including those created prior to 1982, to make claims for interim principal commission. However, as discussed, *infra,* section 7185(b) is not applicable herein as the compensation to the trustee is specifically denoted in Item IV of the codicil. *See* 20 Pa.C.S. § 7185(c).

preme Court began its analysis with the maxim: "It is also well established that if the instrument creating the trust provided the amount of compensation for the trustee, this provision is binding on all parties concerned." 467 Pa. at 376, 357 A.2d at 141. As in *Kennedy*, the Court determined that since the trust deed was silent as to compensation at the termination of the trust, compensation from principal at its close was not precluded. *Reed* does not inform our decision concerning First Union's entitlement to interim compensation.

¶ 20 In *Lawson, supra* at 805, the fee clause at issue read:

The total compensation to the Trustee under this indenture during the continuance of the trust shall be the sum of four percent of the gross income received and collected by the Trustee upon the Trust estate as herein defined.

We analyzed this clause and held that it expressly provided only for compensation from the gross income of the trust and applied only to the term of the trust. The Smith trust, on the other hand, provides for reasonable annual compensation and, due to its perpetual nature, will not terminate.

¶ 21 In sum, *Kennedy, Reed,* and *Lawson* instruct that a provision in a trust for payment of income commission during the term of a trust does not prohibit a payment of principal commission at the trust's termination. The cases are irrelevant here because the Smith trust expressly provides for annual compensation *ad infinitum*. According to its unambiguous terms, First Union's compensation, whether payable from income or principal, cannot exceed the five percent of income ceiling.

¶ 22 Thus, First Union's argument about the 1984 amendment to section 7185(b) and its retroactivity, while an interesting discourse, is irrelevant where, as here, the

compensation is specifically governed by contract. *See Estate of Cahen,* 483 Pa. 157, 394 A.2d 958 (1978) (where trust instrument clearly prescribed terms of compensation, corporate trustee not entitled to additional compensation); *Estate of Breyer,* 475 Pa. 108, 379 A.2d 1305 (1977) (same). Section 7185(c) controls the question and does not authorize additional compensation for past services. Accordingly, the November 8, 2001 order of the orphans' court in this regard is affirmed.

### III. Mrs. Smith's Appeal—No. 573 EDA 2003

¶ 23 In its fee petition, First Union also requested a prospective modification of trustee compensation. The orphans' court agreed that a modification was warranted, commenting that although First Union's investment management yielded a tripling in the value of the assets of the trust, there had been a substantial reduction in the income yield of the trust. The court opined that "this change in investment income is a significant change that could not have been anticipated by Mr. Smith or the corporate trustee." Orphans' Court Opinion, 6/26/02, at 4 (footnote omitted). The court then concluded that "the current compensation to First Union is at such a low rate as to tend to defeat the very purpose of the trust to the point where a competent corporate fiduciary would be reluctant to proceed with the trustee's duties because of inadequate compensation." *Id.* (footnote and citation omitted).

¶ 24 When reviewing a decree of the orphans' court, we determine whether the record is free from legal error and whether the factual findings have record support. We will not reverse the orphans' court's credibility determinations as factfinder absent an abuse of discretion. *In re*

*Estate of Blumenthal,* 812 A.2d 1279 (Pa.Super.2002).

■ ¶ 25 The Pennsylvania Supreme Court has set forth the standard for allowing additional compensation to a trustee:

> It is well settled that where there is a valid agreement between settlor and trustee fixing the terms of the trustee's compensation, courts must ordinarily enforce the terms of the agreement without making an independent determination of whether the terms are reasonable .... An exception to the general rule, in circumstances where the trustee has performed extraordinary services beyond those contemplated by the parties or where the compensation fixed by the agreement is so low that the unwillingness of a competent trustee to continue or undertake to administer the trust would defeat or substantially impair its purposes, is well recognized.

5. The Restatement of Trusts (Third) § 38 adopts a more liberal approach on the question of whether trustee compensation prescribed by the terms of a trust can be modified. Comment (e) reads:

> *e. The terms of the trust.* When the terms of a trust provide that the trustee is to receive a certain compensation or no compensation, the trustee's right to compensation is ordinarily governed by that provision. It is a question of interpretation whether such a provision applies also to successor trustees.
>
> If the amount of compensation provided by the terms of the trust is or becomes unreasonably high or unreasonably low, the court may allow a smaller or larger compensation, or may allow the trustee to resign. See § 36. However, a trustee who has agreed with the settlor to act for a certain compensation is entitled to the agreed compensation only, unless there has been a substantial and unanticipated change in circumstances relevant to compensation. Such an agreement is inferred when a trustee accepts a trust with a provision specifying the compensation without obtaining relief from that provision.

*In re Duncan Trust,* 480 Pa. 608, 614, 391 A.2d 1051, 1055 (1978) (citations omitted). While the issue before the *Duncan* Court was that of "extraordinary services," when the question is whether the trustee compensation is so low as to thwart the purpose of the trust, other authority verified that the proper inquiry is whether a competent trustee would service the trust at the designated rate of compensation. Section 242 of the Restatement (Second) of Trusts states generally that trustees are entitled to compensation for their services. Regarding the adequacy of that compensation, comment (f) was instructive:

> If the amount of compensation provided by the terms of the trust is so inadequate that no duly qualified person would be willing to act as trustee for the compensation so provided, the court may authorize a larger compensation since otherwise the purposes of the trust would be defeated or substantially impaired.[5]

Comment (e) to § 38 of the Restatement (Third) differs from comment (f) to § 242 of the Restatement (Second) as it does not require a showing that no other qualified trustee would be willing to assume the trusteeship. However, our research has not revealed any similar change in our caselaw which alters the language in *Duncan* that the unavailability of a competent trustee must be established before a compensation modification can be approved by the court.

We note additionally that although the Restatement of Trusts (Third) was promulgated and adopted on May 16, 2001, the parties did not present any argument concerning the possible impact of the changed standard for evaluating modification of trustee compensation. We may not, with limited exceptions not applicable herein, *sua sponte* address issues not raised by the parties. *See Leister v. Leister,* 453 Pa.Super. 576, 684 A.2d 192, 196 (1996) (*sua sponte* consideration of issues by Superior Court exceeded proper appellate function of deciding controversies presented to it). *Accord Heath v. WCAB,* 580 Pa. 174, 181–83, 860 A.2d 25, 30 (2004) (non-jurisdictional issue should not be raised *sua sponte* by appellate court).

¶ 26 In decreeing the increase in future compensation to First Union, the orphans' court improperly deviated from the standard announced in *Duncan* and concluded that a modification was appropriate because other competent fiduciaries were "reluctant" to serve as trustee. This decision was legally erroneous for two reasons: the orphans' court incorrectly placed the burden of proof on Mrs. Smith to demonstrate that there was a trustee-in-waiting to administer the trust at its current level of compensation and then gauged the testimony of the current and prospective trustees for "reluctance" as opposed to "unwillingness" to assume the trusteeship.

¶ 27 The burden of proof is on the party seeking the deviation from the terms of a trust. *In re Barnes Foundation*, 453 Pa.Super. 243, 683 A.2d 894, 899 (1996); *In re Estate of Salus*, 421 Pa.Super. 87, 617 A.2d 737, 743 (1992) (trustee has burden of proving services rendered to establish that the amount claimed is just and reasonable compensation).

¶ 28 In finding that the evidence did not reveal the existence of a corporate trustee "ready, willing, and able" to assume responsibility for the trust, the orphans' court evaluated the testimony of witnesses offered by Mrs. Smith to show that such entities existed. The court disparaged the willingness of these prospective trustees to handle the trust because "each of them wanted increased compensation or wanted some revamping of corporate trustee responsibilities to reduce its manpower requirements." Orphans' Court Opinion, 6/26/02, *supra* at 5. Incredibly, the court relegated First Union's admission that it would continue to serve as trustee at the current level of compensation to a footnote, reasoning: "this fact alone does not mean that the compensation provided in Mr. Smith's will is not unreasonably low

and could not have some adverse effects on the trust." *Id.* at n. 6. The burden of proving that another competent fiduciary would not serve as a trustee should have been placed on First Union, not Mrs. Smith. While First Union presented persuasive evidence that its admirable performance as corporate trustee was not commensurate with the compensation rate fixed by the codicil, this type of information does not relieve First Union of its obligation to demonstrate that no other corporate fiduciary would assume the trusteeship under the current compensation. The fact that First Union could not meet this burden is obviated by its own admission that it would continue to serve as trustee, regardless of the outcome of its fee increase request.

¶ 29 The more significant legal error, however, was the orphans' court decision that First Union was entitled to increased compensation because other competent trustees would be "reluctant" to administer the trust under the terms prescribed by Item IV of Mr. Smith's codicil. What the court should have reviewed is whether other trustees were "unwilling" to assume the trusteeship. In this context, the semantical difference between the terms is not inconsequential; it is crucial and dispositive. Indeed, the evidence in this case accentuates the difference.

¶ 30 Mrs. Smith presented testimony from four corporate fiduciaries, Harleysville Trust Company, Bryn Mawr Trust Company, Pitcairn Trust Company, and PNC Bank, N.A., all of whom, subject to certain provisos, would assume the trusteeship at the current compensation rate. Harleysville Trust would accept the trusteeship but would not provide office space or dedicate employees full-time to the trust. Bryn Mawr Trust similarly would serve as trustee without *gratis* space and would require the trust to hire a dedicated

administrator at its own expense. Pitcairn Trust would accept the trusteeship at the established compensation subject to the trust hiring a professional grant administrator. Finally, PNC Bank would accept the trusteeship, but would steamline the grant-making expenses. Thus, these witnesses all stated their "willingness" to assume the trusteeship under its stated compensation terms. That their acceptances were coupled with conditions could conceivably be construed as exhibiting some "reluctance" to serve as trustee; however, their proposed changes to administration of the trust do not diminish their "willingness" to accept the trusteeship. Indeed, those entities which balked at providing free rent or dedicated personnel to the trust were not suggesting decreased services from the current scheme as First Union no longer provides these amenities to the trust.

¶ 31 In addition to the testimony of the above-named entities, perhaps the single most persuasive evidence defeating First Union's claim for modification of future compensation is its own admission that, regardless of the outcome on this issue, it would continue to serve as trustee. By virtue of this statement alone, First Union failed to meet its burden under *Duncan* to demonstrate that no corporate fiduciary would be willing to become the trustee; therefore, it does not merit an increase in its future compensation for administration of the trust.

¶ 32 Finally, we comment upon the position of the Pennsylvania Attorney General, participating in this matter as *parens patriae*, which advocates the modification of future trustee compensation so as not to imperil the trust. For a number of years, First Union has admirably and ethically executed its fiduciary duties in administering this trust to the financial advantage of its numerous beneficiaries. The Attorney General's position implies that without increased compensation, a trustee will not continue this commendable course and will instead skew the investment of the trust funds in order to generate more income, thereby increasing the trustee's level of compensation. We are unwilling to subscribe to a suggestion that a competent trustee would implement a self-interested investment strategy to the detriment of the charitable purpose of the trust. To do so would represent a serious breach of fiduciary duty.

¶ 33 We therefore affirm in part and reverse in part the amended adjudication dated February 14, 2003. The November 8, 2001 order of the orphans' court granting partial summary judgment to Mrs. Smith on the issue of past compensation (No. 1330 EDA 2003) is affirmed and the order of June 26, 2002, increasing First Union's prospective compensation (No. 573 EDA 2003) is reversed. Jurisdiction relinquished.

¶ 34 Judge KLEIN Concurs in the Result.