J-S46033-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ADOPTION OF: M.S., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: T.B., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 863 WDA 2023 |

Appeal from the Decree Entered June 30, 2023
In the Court of Common Pleas of Bedford County
Orphans' Court at No(s):  20 AD 2021

BEFORE:  DUBOW, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                **FILED:  February 8, 2024**

T.B. ("Mother") appeals from the decree granting the petition filed by foster mother ("H.F.W.") to involuntarily terminate Mother's parental rights to M.S. ("Child"), born in July 2015.  We affirm.

The relevant facts and procedural history are as follows.  In July 2021, H.F.W., who has raised Child from the time she was one year old, filed a motion to terminate Mother's parental rights.  At the hearing on H.F.W.'s petition in June 2023, Mother appeared *pro se*.[1]  H.F.W. testified Child's aunt ("Aunt"), whom she knew from work, took custody of Child when Child was

---

[1] The Orphans' Court determined that it saw no conflict with the guardian *ad litem* ("GAL") also serving as Child's legal counsel.  Mother stated that she had no objection, and the court permitted the dual representation.  ***See*** N.T., 6/23/23, at 5-8.

six months old. *See id*. at 13.[2] When Aunt wanted to have her own child, H.F.W. assumed physical custody of Child after helping raise her for approximately six months. *See id*. at 12-16, 35.[3] H.F.W. sought and was granted primary legal and physical custody of Child with Mother receiving visitation rights. *See id*. at 36.

H.F.W. testified she learned, when Child was two years old, Mother wanted to see her. H.F.W. told Mother she would prefer the meeting to occur as part of Child's counseling because Child had rarely seen Mother and did not know she had "another Mother." *Id*. at 32-33.[4] H.F.W. testified Mother sporadically visited Child while monitored by Aunt until the Child was three years old. *See id*. at 16-17. H.F.W. testified Mother progressed to unsupervised visits but had frequent scheduling problems and did not seem to be interested in seeing Child. H.F.W. testified the court ceased the visits after Mother failed drug tests and entered rehabilitation. *See id*. at 38-41, 47, 56.[5] H.F.W. testified Mother last saw Child on New Year's Day, 2020,

---

[2] Mother's addiction to heroin prevented her from raising Child. *See* N.T., 6/23/23, at 62.

[3] At the time, H.F.W. and M.S.'s father were romantically involved. *See* N.T., 6/23/23, at 29-31.

[4] Child had begun seeing a counselor having been traumatized upon seeing a photograph of Mother pregnant with her. *See id*. at 34.

[5] H.F.W. testified that when Mother had an unsupervised visit with Child and her other daughter, the children found Mother asleep on the couch. *See* N.T., 6/23/23, at 40-41.

before she moved to Erie, having failed to take advantage of H.F.W.'s offers to make Child available for visits on a dozen previous occasions. *See id*. at 53. Mother and Child had their last phone call in December 2020. *See id*. at 20.[6] Child sees Aunt a few times each year and has regular contact with her half-sister, Mother's child from another relationship. *See id*. at 40, 42-44.

H.F.W. testified she owns her home in Osterberg, Pennsylvania, where she lives with her fiancé, his three Children, and Child, and has worked for six years in the family hardware store. *See* N.T., 6/23/23, at 11-12. At the time of the termination hearing, Child was preparing to enter the third grade and had lived with H.F.W. for seven and one-half years. *See id*. at 13.

Child has learning difficulties that are treated with medication. At the time of the hearing, her grades had improved as the result of an individualized educational plan ("IEP"), and regular doctors' appointments to which H.F.W. takes her. *See id*. at 17-19. Child engages in a series of extracurricular activities including cheerleading, softball, and church youth group. *See id*. at 20-21. H.F.W. pays for all of Child's activities and expenses and attends to all her daily needs; Mother has not offered any financial assistance, offered to perform parental duties for Child, or kept her promise to send Child gifts, and moved from the Osterberg area to Erie, Pennsylvania, a significant distance away. *See id*. at 21-22, 27, 39-40, 52, 57, 114. Child has close relationships

---

[6] H.F.W. testified Mother texted her in July 2021 asking to speak to Child but H.F.W. refused to permit the call. *See* N.T., 6/23/23, at 59.

with H.F.W.'s parents, whom she regards as grandparents, H.F.W.'s extended family, and H.F.W.'s fiancé's youngest son. *See id*. at 23-24, 49. Child continues to receive counseling to help address her learning difficulties. *See id*. at 44-46. Child has never expressed a desire to see Mother. *See id*. at 46-47, 51.[7] H.F.W. testified she believes adoption is in Child's best interests. *See id*. at 52.

Mother's mother, "T.W." testified Mother's heroin use and Aunt's pregnancy led them and Mother to seek H.F.W.'s help caring for Child because H.F.W. was dating Weist's son. T.W. stated H.F.W. has prevented her from seeing Child. *See id*. at 64. T.W. testified that Mother is now fit to be a mother to Child because she had two jobs, a wife, and a home, and has not used drugs for three years. *See id*. at 68. T.W. also stated she tried to contact an attorney in August 2021 to seek visitation rights for herself. *See id*. at 70.

Mother stated H.F.W. has kept her from contact with Child and told her she would be taken from the property if she tried to see her. Mother testified she wants to be in Child's life, has a business, and is married. *See id*. at 77-80. Mother stated she never filed a petition for custody in the nearly four years since the court granted her visits with Child and has no explanation for not doing so. *See id*. at 82-83, 97. She also testified she had no contact with Child when she moved to Erie. *See id*. at 97.

---

[7] Child's biological father has consented to the termination of his parental rights. *See* N.T., 6/23/23, at 51.

After hearing argument from both parties and the GAL, who advocated for termination, the Orphans' Court articulated its basis for finding the evidence satisfied 23 Pa.C.S.A. § 2511(a)(1), and (b), and granted the involuntary termination petition. *See id*. at 102-17.[8]

Mother filed a timely, counseled notice of appeal and later filed a statement pursuant to Pa.R.A.P. 1925(b).[9] The Orphans' Court wrote a Rule 1925(a) opinion.

On appeal, Mother raises the following issue for our review:

Whether the trial erred/abused its discretion in determining [H.F.W.] had established a legal basis for terminating [T.B.'s] parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), as the court failed to give appropriate weight to [H.F.W.'s] efforts to thwart the mother-daughter relationship, and as such the court's finding is not supported by the record.

Mother's Brief at 5 (capitalization and spacing standardized).

_____

[8] During her testimony, Mother asserted the presiding judge represented her as counsel at a prior dependency hearing. *See* N.T., 6/23/23, at 84-85. Although the judge had "zero recollection" of representing Mother, *see id*. at 85, she stopped the testimony and conducted a colloquy to determine if Mother sought recusal. Mother declined to seek recusal, as did H.F.W. *See id*. at 86-89. The judge reiterated she had no memory of the case and was satisfied she had no bias or conflict. *See id*. at 89-90. Mother does not raise a recusal issue on appeal, and we decline to raise one *sua sponte*. *See In re Smith*, 874 A.2d 131, 137 n.5 (Pa. Super. 2005) (*en banc*) (stating that Superior Court should not raise non-jurisdictional issues *sua sponte*).

[9] Although Mother failed to comply with Pa.R.A.P. 1925(a)(2)(i), Mother's counsel had only recently assumed representation and sought, and was granted, an extension of time to file the statement of matters complained of on appeal. *See* Order, 7/28/23.

An appellate court reviews an involuntary termination order for an abuse of discretion, which limits its review to a determination of whether competent evidence supports the termination court's decree. ***See In re Adoption of C.M.***, 255 A.3d 343, 358 (Pa. 2021). An appellate court must accept the Orphans' Court's findings of fact and credibility determinations which the record supports. ***See Interest of S.K.L.R.***, 256 A.3d 1108, 1123 (Pa. 2021). Where the record supports the Orphans' Court's factual findings, an appellate court may not disturb that court's ruling absent an error of law or abuse of discretion. ***See In re Adoption of L.A.K.***, 265 A.3d 580, 591 (Pa. 2021). An abuse of discretion exists where there is a demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. ***See id***.

Section 2511 of the Adoption Act, 23 Pa.C.S.A. § 2511, governs the involuntary termination of parental rights. If the Orphans' Court determines the petitioner established grounds for termination under section 2511(a) by clear and convincing evidence, then it must assess the petition under section 2511(b), which focuses on the Child's needs and welfare. ***See In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013).

In this case, the Orphans' Court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), and (b), which provide as follows:

> **(a) General rule.**—The rights of a parent in regard to a Child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of

- 6 -

the petition either has evidenced a settled purpose of relinquishing parental claim to a Child or has refused or failed to perform parental duties.

* * * * *

**(b) Other considerations**.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the Child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1) . . . the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

Concerning proof of subsection 2511(a)(1), this Court has stated:

To satisfy the requirements of section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a Child or a refusal or failure to perform parental duties. In addition,

> [s]ection 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a Child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to [s]ection 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a Child or fails to perform parental duties.

> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and Child; and (3) consideration of the effect of termination of parental rights on the Child pursuant to [s]ection 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (internal citations omitted). Clear and convincing evidence is that which is so clear, direct, weighty, and convincing as to allow the trier of fact to reach a clear conviction, without hesitance, of the truth of the precise facts in issue. *See In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000).

The Orphans' Court must consider the whole history of a given case and not mechanically apply the six-month statutory provisions. *See In re D.J.S.*, 737 A.2d 283, 286 (Pa. Super. 1999); *see also In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (stating the Orphans' Court must consider the explanations offered by the parent facing termination of parental rights, to determine if the evidence clearly warrants the involuntary termination). Regarding post-abandonment conduct:

> to be legally significant, [it] . . . must be steady and consistent over a period of time, contribute to the psychological health of the Child, and must demonstrate a serious intent on the part of the parent to recultivate a parent-Child relationship and must also demonstrate a willingness and capacity to undertake the parental role. The parent wishing to reestablish h[er] parental responsibilities bears the burden of proof on this question.

*In re Z.P.*, 994 A.2d 1108, 1119 (Pa. Super. 2010) (internal citation omitted).

Regarding the definition of "parental duties," this Court has stated:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a Child. A Child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the Child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the Child and a genuine effort to maintain communication and association with the Child.

Because a Child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the Child's life.

***Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-Child relationship to the best of his or her ability, even in difficult circumstances.*** A parent must utilize all available resources to preserve the parental relationship[] and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-Child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the Child with . . . her physical and emotional needs.

***In re B., N.M.***, 856 A.2d at 855 (internal citations and quotations omitted) (emphasis added); ***see also In re E.S.M.***, 622 A.2d 388, 393 (Pa. Super. 1993) (noting while the failure to perform parental duties is excused where it is the product of obstructive tactics, a parent cannot obtain the benefit of that excuse unless she has exercised reasonable firmness in attempting to overcome the obstructive behavior).

In her issue on appeal, Mother asserts the Orphans' Court failed to properly weigh the evidence. She argues H.F.W. kept Child from her, told her she would be taken off of the property if she came to H.F.W.'s house, and did not respond to her text messages. ***See*** Mother's Brief at 11-15. Mother further contends when she gave H.F.W. custody, she intended it to be a

temporary situation, she could not afford an attorney, and "did not think it would be smart to fight a case like hers on her own." ***See id***. at 12.

The Orphans' Court's opinion refers this Court to the reasons it offered for termination at the hearing. ***See*** Orphans' Court Opinion, 9/5/23, at 3-4. There, the Orphans' Court found Mother ceased being able to care for Child at the time Child was six months old due to drug addiction, Child essentially lived with H.F.W. from the time she was one year old, H.F.W. became Child's sole caregiver, Mother resumed visits with Child after her release from state prison in 2019, and in November 2019, Mother was granted unsupervised visitation, then moved a considerable distance away to Erie within six months. ***See*** N.T. 6/23/23, at 108-10, 114. The court also found H.F.W. tried at least one dozen times to arrange for Mother to visit Child after Mother got out of rehabilitation following a relapse, but Mother did not do so. ***See id***. at 111. The court found inconsistencies in Mother's testimony she took gifts to H.F.W.'s house on holidays and birthdays, when she simultaneously claimed she was always denied the ability to see Child. ***See id***. at 112. The Orphans' Court assigned significance to the facts H.F.W. has lived at the same address for "quite awhile [sic]" and did not block Mother from calling or texting her. ***See id***. at 112-13. Further, the court found Mother last spoke to Child on the phone in December 2020, and did not credit the suggestion H.F.W. prevented Mother from seeing Child from the time she was six months old. ***See id***. at 113-14. Finally, the Orphans' Court noted Mother moved away from Child six months

after agreeing to visitation rights and failed to seek a modification of the court order or file anything in court and when asked why not, testified, "Well, I have no answer. I didn't know what to do so I did nothing." **See id**. at 114. Based on this evidence, the Orphans' Court found the evidence satisfied the requirements of 23 Pa.C.S.A. § 2511(a)(1).

After careful review, we conclude that the record supports the Orphans' Court's findings of fact and conclusions of law and that the court did not abuse its discretion in its weighing the evidence and granting H.F.W.'s involuntary termination petition. The record supports the Orphans' Court's finding that Mother made limited attempts to contact Child. Mother did not pursue additional custody, moved away from where Child lived, did not call her after December 2020, and did not provide financial support for Child and undertook no parental responsibilities. **See** N.T., 6/23/23, at 12 -21, 27, 32-41, 52-53, 57, 82-83, 97, 114. Mother failed to establish that she made reasonable efforts to overcome any obstacles H.F.W. placed to obstruct her access to Child. **See In re E.S.M.**, 622 A.2d. at 393.

The record also supports the Orphans' Court's determination that Mother failed to perform her parental duties for more than the six months prior to the filing of the July 2021 termination petition, notwithstanding the impediments her imprisonment and H.F.W.'s limited cooperation represented. **In re B., N.M.**, 856 A.2d at 855; **In re E.S.M.**, 622 A.2d at 393. Because we discern no error of law or abuse of discretion, Mother has failed to present a basis for

us to disturb the Orphans' Court's finding of grounds for termination pursuant to Section 2511(a)(1).[10]

Based on the foregoing, we affirm the decree involuntarily terminating Mother's parental rights.

Decree affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE:  2/8/2024

---

[10] Mother failed to preserve a section 2511(b) claim.  Even if she had, it would be meritless.  A section 2511(b) analysis focuses on the developmental, physical, and emotional needs and welfare of the Child, **see** 23 Pa.C.S.A. § 2511(b), including "[i]ntangibles such as love, comfort, security, and stability," **In re K.M.**, 53 A.3d 781, 791 (Pa. Super. 2012), and a consideration of the parent-child bond.  **See In re E.M.**, 620 A.2d 481, 485 (Pa. 1993).  Relying on testimony that Child looks to H.F.W. as her mother to meet all her daily physical, education, emotional, and medical needs and had done so for the preceding seven-and-one-half years and does not identify Mother as her mother, the Orphans' Court found no bond between Mother and Child and, moreover, found Child identifies H.F.W. as her mother.  **See** N.T., 6/23/23, at 116-17.  The record evidence supports the Orphans' Court's finding, and we would have no basis to disturb that determination.